The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim L. Cramer. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. Prior to the hearing, an undated Pre-Trial Agreement was entered into by the parties and is made a part of the evidentiary record.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The employee-employer relationship existed between plaintiff Lacy G. Grainger, Jr. and defendant Ronald Freiberger Architectural Associates at all times relevant to this claim.
4. At the time of plaintiff's alleged injury by accident, defendant was non-insured.
5. The issue before the Commission is whether plaintiff sustained a compensable injury by accident, and if so, the compensable consequences.
6. The plaintiff's average weekly wage on the date of the alleged injury by accident was $527.04.
7. Subsequent to the hearing, medical records and transcripts for the depositions of Dr. Saul Schwarz and Dr. William Busby were submitted and received in evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was on born September 21, 1946. Plaintiff began working as a carver for the defendant-employer in November, 1991. Prior to that, plaintiff had approximately 23 years experience as a carver.
2. Plaintiff's average weekly wage as of April 1992 was $527.04, yielding a compensation rate of $351.38.
3. Plaintiff's job involved running the multiple spindle carving machine. He would set up the machines and adjust them as necessary. He used different sizes of carving knives depending on the job he was running. The machine is used to carve wooden items such as table and chair legs. A model is used to reproduce 24 other pieces.
4. The carving machines have belts which turn the spindles. Sometimes a belt may break so that the particular spindle or spindles it turns stop spinning.
5. On the morning of April 29, 1992, plaintiff came to work a little early. He was sore and had left arm pain from the work he had been doing for the past 6 or 7 days. He had noticed this soreness over the previous weekend. On that morning, plaintiff was having problems holding down the cutter bar because of his arm and shoulder soreness. One of the belts broke on the carver while plaintiff was using it. The belt that broke was close to the area where plaintiff stood, so that he had to stretch a bit further to watch the model and what he was doing. As plaintiff was leaning over and carving, he felt pain in his left shoulder.
6. The next day, plaintiff reported to his supervisor, Steve Berrier, that he had injured himself. Berrier advised plaintiff that he should probably go to the emergency room. Plaintiff was seen at the emergency room of Thomasville Community General Hospital, where he complained of pain in his left shoulder. He was diagnosed with a left shoulder strain.
7. Due to his continued pain, plaintiff went to see his family physician, Dr. Oscar Blackwell at Thomasville Medical Associates, whom he first saw on May 8, 1992. Dr. Blackwell assessed musculoskeletal pain and continued to treat plaintiff until he referred him for further evaluation to Dr. William Busby, an orthopedic specialist.
8. Dr. Busby first saw plaintiff on June 22, 1992. Plaintiff was complaining of pain in his left shoulder, with occasional paresthesias and radicular pain into his left hand. Dr. Busby noted that plaintiff was alert and in no obvious distress. Plaintiff's neck was supple, with no obvious deformity. Dr. Busby found no indication of shoulder impingement. Plaintiff had full active and passive range of motion without significant pain in his shoulders. However, lateral bending to the left and rear with axial pressure did cause pain and paresthesias to the left shoulder and upper arm. X-rays of the neck showed significant disc space narrowing and several levels of osteophytes, particularly at C3-4 and C5-6. There was some narrowing of the C5-6 foramina on the left. Dr. Busby's impression was cervical radiculitis. Dr. Busby treated plaintiff with a 10 day period of prednisone.
9. Osteophytes, or bone spurs, are abnormal bone projections from the bone which take months and even years to form. According to Dr. Busby, the osteophytes he noted in plaintiff's cervical area could not have formed in the two months between April 29, 1992 and plaintiff's visit to Dr. Busby on June 22, 1992. Osteophytes generally do occur in conjunction with a bulging or herniated disc and generally indicate some arthritic change or trauma.
10. Plaintiff continued to complain of pain and on July 17, when he saw Dr. Busby, he reported that work seemed to be aggravating his symptoms. Dr. Busby referred plaintiff to Dr. Schwarz, a neurologist.
11. Dr. Schwarz saw plaintiff on July 21, 1992, at which time plaintiff was complaining of pain in his left shoulder, arm and neck. The Spurling sign was positive, which indicated irritation of the cervical nerve root; however, plaintiff's reflexes were intact, with only mild sensory changes. Dr. Schwarz also noted that the x-rays showed multiple narrowing of the disc spaces and spur formation, particularly at C5-6.
12. Dr. Schwarz ordered a cervical MRI which was done on July 24, 1992. The MRI revealed a central disc bulge at C4-5 more on the left than on the right. Thereafter, Dr. Schwarz reviewed the MRI with plaintiff on July 29, 1992.
13. Dr. Schwarz testified that bone spurs take months or years to form and noted that bone spurs are generally associated with some mild to moderate degree of disc bulging. When a disc degenerates, the ligament pulls away from the spine and as a healing response, the spine attempts to attach the loose ligaments to the vertebral bodies by forming bone cells which produce the bone spurs. Dr. Schwarz was unable to state, to any degree of medical certainty, when the herniation of the disc occurred. However, he did state that the osteophytes would have been present for a good length of time prior to April 29, 1992.
14. Likewise, Dr. Busby's testimony shows that the osteophytes would have been present for months or even years prior to April 29, 1992. Furthermore, Dr. Busby was unable to state, to any degree of medical certainty, when the herniation of the disc occurred.
15. Plaintiff had pain and soreness in his left arm for several days prior to April 29, 1992. Although on April 29, 1992 the pain apparently increased and spread to plaintiff's shoulder, the medical evidence of record fails to establish that any incident of April 29, 1992 caused an injury to the plaintiff or materially aggravated a pre-existing condition. Both Dr. Busby and Dr. Schwarz agree that the osteophytes developed over a long period of time, many months, or possibly many years prior to April 29, 1992. The osteophytes were not the result of any traumatic injury on or about April 29, 1992. Likewise, neither Dr. Busby nor Dr. Schwarz can state to a reasonable degree of medical certainty that the herniated disc at C5-6 was sustained on or about April 29, 1992. However, both physicians agree that the formation of osteophytes is associated with some degree of disc bulging and/or disc herniation.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Although plaintiff felt increased pain in his shoulder on April 29, 1992, the greater weight of the evidence fails to establish that plaintiff sustained an accident or specific traumatic incident on or about April 29, 1992.
2. Even if it should be found as fact that plaintiff sustained an accident on or about April 29, 1992 as he alleges, the medical evidence of record fails to establish that there were any compensable consequences of said accident. The evidence fails to establish that any injury to plaintiff's back, specifically the osteophytes and herniated disc in the cervical area, were the results of an incident which occurred on or about April 29, 1992.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Under the law, plaintiff's claim must be, and the same is, hereby DENIED.
2. Defendants shall pay the costs, including expert witness fees in the amount of $300 to Dr. William Busby of Davidson Orthopedic Clinic, Inc. and $300 to Dr. Saul Schwarz of Johnson Neurological Clinic, to the extent not already paid.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER
DCS:bjp